## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | |
|---|---|
| IN RE:<br><br>**Deborah Jones Moon,**<br>     **Debtor.** | **CHAPTER 13**<br>**CASE NO.: 18-11684-SDB** |
| **Selene Finance LP,**<br>                         Movant,<br>v.<br><br>**Deborah Jones Moon,**<br>     **Debtor,**<br>**Huon Le,**<br>     **Trustee,**<br>                         Respondents. | CONTESTED MATTER |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW, Selene Finance (the "Movant"), by and through its undersigned counsel, moves for relief from the automatic stay and alleges as follows:

1.

The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362, FRBP 4001(a), and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

2.

Deborah Jones Moon (the "Debtor"), filed a petition for relief under Chapter 13 of the Bankruptcy Code on November 28, 2018.

3.

Movant is the holder or servicer of a loan secured by certain real property in which the Debtor has an interest.  Movant holds a security interest in the Debtor's real

property now or formerly known as 5615 Rabun Road, Thomson, Georgia 30824 (the "Property") by virtue of a Security Deed dated March 28, 2008. Said Security Deed secures a Note in the original principal amount of $89,675.00. The promissory note has been duly endorsed. Secured Creditor is the holder of the note ("noteholder"), and is either the original Mortgagee, beneficiary, or assignee of the security instrument for the referenced loan.

4.

The terms and conditions of the Note and Mortgage were later amended pursuant to the Loan Modification Agreement (the "Agreement") made December 11, 2019. Said Agreement created a new principal balance of $77,498.32. A true and accurate copy of the Agreement is attached hereto.

5.

Movant alleges that the Debtor is in default to Movant under the terms of the loan documents, having failed to make certain post-petition mortgage payments that have come due. As of September 06, 2022, the post-petition arrearage owed to Movant is $1,167.70 and consists of three (03) monthly mortgage payments at $567.28 each, less a suspense balance of $534.14. An additional payment will come due October 01, 2022 and on the first day of each month thereafter until the loan is paid in full.

6.

Movant further alleges there appears to be no equity in the Property; therefore, the Property is not necessary for effective reorganization. The current unpaid principal balance due under the loan documents is approximately $85,304.24. The Property is most recently valued at $46,309.00 by the McDuffie County Tax Assessor's Office.

7.

Movant's security interest in the Property is not adequately protected due to the Debtor's failure to maintain the mortgage payments.

8.

Movant has incurred attorney's fees and costs as a result of filing this motion. These fees and costs are recoverable pursuant to the loan documents, and Movant seeks leave to recover these fees and costs under the remedies available therein.

9.

Pursuant to 11 U.S.C. § 362, Movant alleges that sufficient cause, including lack of adequate protection, exists for the automatic stay to be terminated.

WHEREFORE, Movant respectfully prays to the Court as follows:

(a) That the automatic stay under 11 U.S.C. § 362 be modified to allow Movant to pursue state remedies to protect its security interest in the Property, including, but not limited to, advertising to effectuate a foreclosure sale and gaining possession of the Property; to contact the Debtor via telephone or written correspondence to discuss potential loan workout or loss mitigation opportunities; and to perform property preservation as appropriate;

(b) That Movant's attorney's fees and costs incurred in filing and prosecuting this Motion be recoverable as pursuant to the loan documents and remedies available therein;

(c) That the fourteen (14) day stay of Bankruptcy Rule 4001(a)(3) be waived;

(d) That Movant be permitted to offer and provide Debtor(s) with

information regarding a potential forbearance agreement, loan

modification, refinance agreement, or other loan workout/loss

mitigation agreement, and to enter into such an agreement with

Debtor(s).

(e) That in the event of an Order granting relief from the automatic stay

and said Order also instructing the Chapter 13 Trustee to cease

disbursements on Movant's Proof of Claim, Fed. R. Bank. P.

3002.1 shall no longer apply as to Movant, as said Rule only

applies in Chapter 13 cases in which claims secured by a principal

residence are provided for under Section 1322(b)(5) of the Code in

the Chapter 13 Plan; and

(f) For such other and further relief the Court deems just and proper.

Date: September 14, 2022

**Robertson, Anschutz, Schneid, Crane
& Partners, PLLC**

/s/ Andrea L. Betts
Andrea L. Betts
Georgia Bar # 432863
10700 Abbott's Bridge Road, Suite 170
Duluth, GA  30097
Telephone: 470-321-7112
Fax: 404-393-1425
Email: abetts@raslg.com

# Supporting Documents

# NOTE

**March 28, 2008**
[Date]

**5615 RABUN RD**
**THOMSON, GA  30824**
[Property Address]

**1.   PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **Home America Mortgage, Inc.**

and its successors and assigns.

**2.   BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of **Eighty Nine Thousand Six Hundred Seventy Five and no/100**                                       Dollars (U.S. **$89,675.00**                          ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Six and One Eighth**

percent (                    **6.1250%**) per year until the full amount of principal has been paid.

**3.   PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4.   MANNER OF PAYMENT**

(A)   Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **May 01, 2008**                . Any principal and interest remaining on the first day of           **April 2038**                , will be due on that date, which is called the "Maturity Date."

(B)   Place

Payment shall be made at **Home America Mortgage, Inc.**                          , **950 Grayson Hwy,,** **Lawrenceville**                , **GA**         **30045**

or at such other place as Lender may designate in writing by notice to Borrower.

(C)   Amount

Each monthly payment of principal and interest will be in the amount of U.S. **$544.87**                          .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

MULTISTATE FHA FIXED RATE NOTE

6/96
GreatDocs™
(Page 1 of 3)

**(D)  Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Growing Equity Allonge                    ☐ Graduated Payment Allonge

☐ Other [specify]

## 5.  BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6.  BORROWER'S FAILURE TO PAY

**(A)  Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **Four** percent ( **4%**) of the overdue amount of each payment.

**(B)  Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C)  Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7.  WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

**MULTISTATE FHA FIXED RATE NOTE**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_____ (Seal)
DEBORAH MOON                    -Borrower

_____ (Seal)
CLARENCE MOON                   -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

Without recourse, pay to the order of
Taylor, Bean & Whitaker Mortgage Corp.
Home America Mortgage, Inc.

By: _____
        Erla Carter-Shaw

Attorney-In-Fact

Without recourse, pay to the order of

By: Taylor, Bean & Whitaker
    Mortgage Corp.

_____
Erla Carter-Shaw, E.V.P.

*[Sign Original Only]*

MULTISTATE FHA FIXED RATE NOTE

GreatDocs™
*(Page 3 of 3)*

After Recording Return To:
**HAMMOND & HAMMOND**
**244 JACKSON ST**

**THOMSON**                , GA          30824

Recorded 04/02/2008 11:15AM
Georgia Intangible Tax Paid: $270.00
*# 9536*
Connie H. Cheatham
Clerk Superior Court, McDuffie County, Ga.
Bk **00496**   Pg   **0036-0047**

------------------------- [Space Above This Line For Recording Data] -------------------------

# SECURITY DEED

    THIS SECURITY DEED ("Security Instrument") is given on **March 28, 2008**
The grantor is **DEBORAH MOON,CLARENCE MOON**

("Borrower").This Security Instrument is given to
Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS is a separate corporation that is acting solely as nominee
for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is organized
and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026,
tel. (888) 679-MERS. **Home America Mortgage, Inc.**

("Lender") is organized and existing
under the laws of **GA**                                                                    , and
has an address of **950 Grayson Hwy,, Lawrenceville**          , GA          30045

Borrower owes Lender the principal sum of **Eighty Nine Thousand Six Hundred Seventy Five and no/100**
Dollars (U.S. **$89,675.00**                ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on **April 01, 2038**
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under
paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS
(solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of
sale, the following described property located in **McDuffie**                                County, Georgia:

**GEORGIA FHA SECURITY DEED**                                                                6/96

GreatDocs™
(Page 1 of 7)

**See Attached Exhibit A.**

which has the address of
**5615 RABUN RD**
[Street]

**THOMSON**          Georgia          **30824**          ("Property Address");
[City]                                 [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

GEORGIA FHA SECURITY DEED
MERS

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

GEORGIA FHA SECURITY DEED

7.   **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.   **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.   **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **eight months** from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **eight months** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10.   **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure

**GEORGIA FHA SECURITY DEED**

proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

**GEORGIA FHA SECURITY DEED**

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18.   Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by applicable law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19.   Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20.   Waivers of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21.   Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22.   Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23.   Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☐ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☒ Other [Specify] **Manufactured Home Rider** | |

Other [Specify] Manufactured Home Rider
Waiver of Borrower's Rights
Closing Attorney's Affidavit

**GEORGIA FHA SECURITY DEED**

BORROWER ACCEPTS AND AGREES to the terms contained in pages 1 through 7 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____ (Seal)
**DEBORAH MOON**                              -Borrower

_____ (Seal)
**CLARENCE MOON**                             -Borrower

Notary Public,    McDuffie      County

My commission expires: 4-1-2011

_____ (Seal)
                                             -Borrower

_____ (Seal)
                                             -Borrower

_____ (Seal)
                                             -Borrower

_____ (Seal)
                                             -Borrower

**GEORGIA FHA SECURITY DEED**

GreatDocs™
(Page 7 of 7)

EXHIBIT "A"

ALL that tract, lot or parcel of land, with any and all improvements thereon, situate, lying and being in the 132nd District, G.M. of McDuffie County, Georgia, containing 1.37 acres, more or less, being designated and identified as Lot 35 on a plat of survey prepared by John A. McGill, R.L.S. No. 1753, dated April 23, 1973, a copy of which is recorded in Plat Record L at page 124 in the Office of the Clerk of Superior Court of McDuffie County, Georgia, and to which plat and the official record thereof reference is hereby specifically made in aid of and for a more complete and detailed description of said lot as to its courses, bounds, metes and distances.

LESS AND EXCEPT that property, containing 0.46 acre, conveyed in Deed Book 105 at page 148 on May 1, 1978, Plat Book 0, Page 131 in the Office of the Clerk of the Superior Court of McDuffie County, Georgia.

Also included is one 2000 24x64 Dynasty Manufactured Mobile Home Serial No. H801085GL&R, attached to the above described property, by virtue of a Mobile/Manufactured Home Certificate of Permanent Location which is recorded in Deed Book 365, Pages 128-129, McDuffie County, Georgia records.

Said property is subject to any and all restrictions and easements of record.

# MANUFACTURED HOME RIDER

STATE OF  **GA**                    )
                                                 ) ss:
COUNTY OF  **McDuffie**          )

This Manufactured Home Rider is made on this day  **3/28/2008**    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **Home America Mortgage, Inc.** _____ (the "Lender") of the same date and covering the Property described in the Security Instrument which is located at:
**5615 RABUN RD, THOMSON, GA  30824** _____.

Borrower and Lender agree that the Security Instrument is amended and supplemented to read as follows:

A.    The Property covered by the Security Instrument (referred to as "Property" in the Security Instrument) includes, but is not limited to the Manufactured Home
       (Serial Number ███████████ , Model: _____ ,
       Make: **Dynasty** _____ , Year: **2000**    , Size: **24x64**    ,)
       Label/Seal No.: _____ affixed to the property legally described in the Security Instrument.

B.    Additional Covenants of Borrower:

       1.   Borrower will comply will all state and local laws and regulations regarding the affixation of the Manufactured Home to the property described in the Security Instrument including, but not limited to, surrendering the Certificate of Title (if required) not obtaining and recording the requisite governmental approval and accompanying documentation necessary to classify the Manufactured Home as real property under state and local law, including a statement of ownership and location.

       2.   The Manufactured Home described above will be, at all times and for all purposes, permanently affixed to and part of the property described in the Security Instrument.

       3.   Affixing the Manufactured Home to the property described in the Security Instrument does not violate any zoning laws or other local requirements applicable to manufactured homes.

Before me, the undersigned authority duly authorized to take acknowledgments and administer oaths personally appeared  **DEBORAH MOON, CLARENCE MOON**

("Affiants") who, upon being duly sworn, depose and say as follows:

1.    Affiants hereby certify that, upon taking title to the property described above, they will do the following:

       The manufactured home will be permanently part of the real property that secures the Security Instrument executed on    **3/28/2008**    .

       All necessary documentation required will be supplied to perfect title in the Manufactured home.

       Manufactured Home is an improvement to the land and an immovable fixture considered as real estate.

2.    Affiants acknowledge that this Affidavit of Intent is given as a material inducement to cause **Home America Mortgage, Inc.** _____ to make a mortgage loan to Affiants and that any false statements, misrepresentations or material omissions shall constitute a breach of the Affiant's obligation to **Home America Mortgage, Inc.** _____ and that all the provisions of the mortgage indenture concerning default on the Promissory Note will thereupon be in full force and effect.

3.    Affiants further acknowledge that it is a Federal crime punishable by fine or imprisonment or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

4.  The agreements and covenants contained herein shall survive the closing of the mortgage loan
    transaction.

_____ Date _3-28-08_
DEBORAH MOON

_____ Date _3-28-08_
CLARENCE MOON

_____ Date _____

_____ Date _____

_____ Date _____

_____ Date _____

State of  Georgia
County of  McDuffie

The  forgoing  instrument  was  acknowledged  before  me  this __28th__ day  of __March,__ __2008,__ by Deborah Moon and
Clarence Moon _____ who is personally known to me or who has produced __driver's license__
as identification.

_____
Notary Public

My commission expires: _4-1-2011_

(Seal)

GEORGIA- **FHA**

GRANTOR: **DEBORAH MOON, CLARENCE MOON**

LENDER:   **Home America Mortgage, Inc.**

DATE OF SECURITY DEED: **3/28/2008**

████████████████

### WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY:(1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISION OF THE PARAGRAPH 17 HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN PARAGRAPH 17 HERREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND PARAGRAPH 17 OF THIS DEED AND ANY ALL QUESTIONS REGARDING LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLYBY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

O.C.G.A. SECTION 7-1-1014 (3) REQUIRES THAT WE INFORM YOU THAT IF YOU FAIL TO MEET ANY CONDITION OR TERM OF THE DOCUMENTS THAT YOU SIGN IN CONNECTION WITH OBTAINING A MORTGAGE LOAN YOU MAY LOSE THE PROPERTY THAT SERVES AS COLLATERAL FOR THE MORTGAGE LOAN THROUGH FORCLOSURE.

READ AND AGREED BY GRANTOR:

Signed, Sealed and Delivered
in the presence of:

_____

NOTARY PUBLIC
My commission expires: 4-1-2011

_____ (Seal)
**DEBORAH MOON**                Grantor
_____ (Seal)
**CLARENCE MOON**              Grantor
_____ (Seal)
                              Grantor
_____ (Seal)
                              Grantor
_____ (Seal)
                              Grantor
_____ (Seal)
                              Grantor

████████████████

## CLOSING ATTORNEY'S AFFIDAVIT

RE: Borrower(s): **DEBORAH MOON, CLARENCE MOON**

Lender:   **Home America Mortgage, Inc.**

Date:   **3/28/2008**

Before the undersigned attesting officer personally appeared the undersigned closing attorney or agent, who having been the first duly sworn according to law states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Acknowledgement and Waiver of Borrower's Rights" by the Borrower(s), a representative of the firm reviewed with and explained to the Borrower(s) the term and provisions of the Deed to Secure Debt and particularly the provisions thereof, thereof authorizing the Lender to sell the secured property by a non-judicial foreclosure under a power of sale, together with the "Acknowledgement and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosures in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with an explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Acknowledgement and Waiver of Borrower's Rights."

Based on said review and explanation to the Borrower(s), it is the opinion of the firm that the Borrower(s) knowingly, intentionally and willingly executed the waiver of the Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Closing Attorney

Sworn and subscribed before me
this 28th day of March, 2008

Notary Public
My commission expires: 4-1-2011

Recorded 04/10/2012 11:00AM

Connie H. Cheatham
Clerk Superior Court, McDuffie County, Ga.
Bk 00581 Pg 0178

This space for Recorder's use

**Recording Requested By:**
Bank of America
**Prepared By:**
Danilo Cuenca
888-603-9011
450 E. Boundary St.
Chapin, SC 29036

**When recorded mail to:**
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

Property Address:
**5615 Rabun Dr**
**Thomson, GA 30824-8930**

MERS Phone #: 888-679-6377

## ASSIGNMENT OF SECURITY DEED

For Value Received, the undersigned holder of a Security Deed (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL-61834** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP** whose address is **451 7TH ST.SW #B-133, WASHINGTON D C 20410** all beneficial interest under that certain Security Deed described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Security Deed.

Original Lender:     **HOME AMERICA MORTGAGE, INC.**
Made By:     **DEBORAH MOON, CLARENCE MOON**
Date of Security Deed:     3/28/2008
Original Loan Amount:     $89,675.00

Recorded in **McDuffie** County, GA on: 4/2/2008, book 00496, page 0036 and instrument number N/A

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Security Deed to be executed on
APR 0 4 2012

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____     By: _____

_____Swarupa Slee Vice President_____     _____Martha Munoz Vice President_____

Witness: _____Dominique Johnson_____     Witness: _____Beverly Brooks_____

State of California
County of Ventura

On APR 0 4 2012 before me, **Shannon Steeg** Notary Public, personally appeared _____Swarupa Slee_____ and _____Martha Munoz_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person (s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SHANNON STEEG
Commission
Notary Public - California
Los Angeles County
My Comm. Expires May 17, 2013

Notary Public _____Shannon Steeg_____     : (Seal)
My Commission Expires: May 17, 2013

Recorded 01/27/2017 11:30AM
☆ 145674

Connie H. Cheatham
Clerk Superior Court, McDuffie County, Ga.
Bk 00651   Pg 0480-0483

Prepared by, Recording Requested By and Return to:
SELENE FINANCE LP
9990 RICHMOND AVE., SUITE 400 SOUTH
HOUSTON, TX 77042

## ASSIGNMENT OF SECURITY DEED

*FOR VALUE RECEIVED,*
ASSIGNOR: BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS
SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP, ITS SUCCESSORS AND
ASSIGNS, whose address is c/o SELENE FINANCE LP, 9990 RICHMOND AVE, STE 400 S, Houston, TX
77042, does hereby assign and transfer to
ASSIGNEE: SELENE FINANCE LP, whose address is 9990 RICHMOND AVE, STE 400 S, HOUSTON, TX
77042, all its right, title and interest in and to the described Security Deed:
BORROWER: DEBORAH MOON, CLARENCE MOON
BENEFICIARY: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR
HOME AMERICA MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS
DATED: 3/28/2008      AMOUNT: $89,675.00
RECORDED: 4/2/2008 at Book 496 Page 36,
in the MCDUFFIE County Clerk's Office, State of GEORGIA.

Property Address: 5615 RABUN ROAD, THOMSON, GEORGIA 30824

Executed this _____ 1-10-2017 _____ .

BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS SERVICING, LP BY SELENE FINANCE LP, ATTORNEY IN FACT

By: _____ DONNA BRAMMER _____
Title: VICE PRESIDENT (Georgia must be signed by a Vice President or higher)

Signed, Sealed and Delivered this 10th day of January, 2017 in the
presence of

_____ (Witness)
V. Cumbie _____ (Printed Name)

_____
Notary Public in and for the State of TEXAS and County of HARRIS
Notary's Printed Name: JOSE LUIS BERRUETE
My Commission Expires: 9/17/2017

JOSE LUIS BERRUETE
Notary Public, State of Texas
Comm. Expires 09-17-2017

After Recording Return To:
ServiceLink
Attn: Loan Modification Solutions
3220 El Camino Real
Irvine, CA 92602

*[Space Above This Line For Recording Data]*

Original Principal Amount $89,675.00
Unpaid Principal Amount $71,137.04
New Principal Amount $77,498.32
Total Cap Amount $6,361.28

# HOME AFFORDABLE MODIFICATION AGREEMENT

Dated: **December 11, 2019**
Borrower ("I")[1] : **DEBORAH MOON, CLARENCE MOON**
Lender or Servicer ("Lender"): **SELENE FINANCE LP**

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **March 28, 2008**

Property Address *[and Legal Description if recordation is necessary]* ("Property"): **5615 RABUN RD, THOMSON, GA 30824**
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

Original security instrument in the amount of **$89,675.00** and recorded on **April 2, 2008** in Book, Volume, or Liber No. **496**, at Page **36** (or as Instrument No. **N/A**) , in the Office of the County Clerk or Register of **MCDUFFIE** County, State of Georgia.

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Georgia Home Affordable Modification Agreement – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations and Covenants.**  I certify, represent to Lender, covenant and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents.  A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G.  I have made or will make all payments required under a trial period.

2.  **Acknowledgements and Preconditions to Modification.**  I understand and acknowledge that:

    A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate.  In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B.  I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.**  If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **December 1, 2019** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.  I understand that if I have failed to make any payments as a precondition to this modification under a trial period

Georgia Home Affordable Modification Agreement – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

plan, this modification will not take effect. The first modified payment will be due on **January 1, 2020**.

A.      The Maturity Date will be: **December 1, 2049**.

B.      The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan.The new principal balance of my Note will be **$77,498.32** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.      Interest at the rate of **4.000%** will begin to accrue on the New Principal Balance as of **December 1, 2019** and the first new monthly payment on the New Principal Balance will be due on **January 1, 2020**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|-------------------------------------------|------------------------|-------------------|----------------------------|
| 1 - 30 | 4.000% | 12/01/2019 | $369.99 | $170.60, may adjust periodically | $540.59, may adjust periodically | 01/01/2020 | 360 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

Georgia Home Affordable Modification Agreement – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.   **Additional Agreements.** I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents);  or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.   That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage.  Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of

such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.    That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.    That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.    That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.    That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.    Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

Georgia Home Affordable Modification Agreement – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.   In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary.  If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original Note.  All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents."  I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Home Affordable Modification Agreement and in any Rider executed by Borrower and recorded with it.

| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| **DEBORAH MOON** -Borrower | **CLARENCE MOON** -Borrower |
| Mailing Address: **5615 RABUN RD, THOMSON, GA 30824** | Mailing Address: **5615 RABUN RD, THOMSON, GA 30824** |
| | |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| Mailing Address: | Mailing Address: |

**Georgia Home Affordable Modification Agreement – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

**ACKNOWLEDGMENT**

State of Georgia                              §
                                             §
County of McDuffie                           §

     This record was acknowledged before me on ___December 19, 2019___ by **DEBORAH MOON AND CLARENCE MOON** who proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

___✓✓___ Personally Known
       or
_____ Produced Identification

Type and # of ID (last 4 digits)    _____

ID Expiration Date    _____

_____ 12/19/19
Unofficial Witness       Date

Cindy Jones
Printed, Typewritten, or Stamped Name

               Crystal M. Richards
               Signature of Notary Public

               Crystal M. Richards
               (Name of Notary, Typed, Stamped or Printed)
               Notary Public State of Georgia

(Stamp/Seal)         My Commission Expires: 1/10/2020

---

**Georgia Home Affordable Modification Agreement** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**SELENE FINANCE LP**

By: _____

Tonya Higginbotham   Assistant Vice President   -Lender   Date of Lender's Signature

_____

Witness Signature                                    (Date)

Printed Name _____Willette Ricks_____

### ACKNOWLEDGMENT

State of _____Florida_____

County of _____Duval_____

The foregoing instrument was acknowledged before me this
_____ by _____Tonya Higginbotham_____;
_____Assistant Vice President_____ of **SELENE FINANCE LP**, a **Delaware** limited partnership, on behalf
of the limited partnership. He/she is personally known to me or who has produced
_____ as identification.

_____
Signature of Person Taking Acknowledgment
                    Margo A Wise
_____
Name Type, Printed or Stamped
                    Notary
_____
Title or Rank

Serial Number, if any

My Commission Expires: __08/08/2023__

Notary Public State of Florida
Margo A Wise
My Commission
Expires 08/08/2023

(Seal)

_____
**Georgia Home Affordable Modification Agreement** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

EXHIBIT A

BORROWER(S): DEBORAH MOON, CLARENCE MOON

████████████████████

LEGAL DESCRIPTION:

STATE OF GEORGIA, COUNTY OF MCDUFFIE, AND DESCRIBED AS FOLLOWS:

ALL THAT TRACT, LOT OR PARCEL OF LAND, WITH ANY AND ALL IMPROVEMENTS THEREON, SITUATE, LYING AND BEING IN THE 132ND DISTRICT, GM. OF MCDUFFIE COUNTY, GEORGIA, CONTAINING 1.37 ACRES, MORE OR LESS, BEING DESIGNATED AND IDENTIFIED AS LOT 35 ON A PLAT OF SURVEY PREPARED BY JOHN A. MCGILL, R.L,S. NO. 1753, DATED APRIL 23, 1973, A COPY OF WHICH IS RECORDED IN PLAT RECORD L AT PAGE 124 IN THE OFFICE OF THE CLERK OF SUPERIOR COURT OF MCDUFFIE COUNTY, GEORGIA, AND TO WHICH PLAT AND THE OFFICIAL RECORD THEREOF REFERENCE IS HEREBY SPECIFICALLY MADE IN AID OF AND FOR A MORE COMPLETE AND DETAILED DESCRIPTION OF SAID LOT AS TO ITS COURSES, BOUNDS, METES AND DISTANCES.  LESS AND EXCEPT THAT PROPERTY, CONTAINING 0.46 ACRE, CONVEYED IN DEED BOOK 105 AT PAGE 148 ON MAY 1, 1978, PLAT BOOK 0, PAGE 131 IN THE OFFICE OF THE CLERK OF THE SUPERIOR COURT OF MCDUFFIE COUNTY, GEORGIA.  ALSO INCLUDED IS ONE 2000 24X64 DYNASTY MANUFACTURED MOBILE HOME SERIAL NO. H801085GL&R, ATTACHED TO THE ABOVE DESCRIBED PROPERTY, BY VIRTUE OF A MOBILE/MANUFACTURED HOME CERTIFICATE OF PERMANENT LOCATION WHICH IS RECORDED IN DEED BOOK 365, PAGES 128-129, MCDUFFIE COUNTY, GEORGIA RECORDS. SAID PROPERTY IS SUBJECT TO ANY AND ALL RESTRICTIONS AND EASEMENTS OF RECORD.

████████████████████

ALSO KNOWN AS: 5615 RABUN RD, THOMSON, GA 30824

Georgia Home Affordable Modification Agreement – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Borrowers ("Borrower"): DEBORAH MOON, CLARENCE MOON

# LOAN MODIFICATION AGREEMENT RIDER

THIS LOAN MODIFICATION AGREEMENT RIDER is made this **11th** day of, **December, 2019**, by and between the undersigned borrower (the "Borrower") and **SELENE FINANCE LP**, (the "Lender") and is incorporated into and shall be deemed to amend and supplement that certain LOAN MODIFICATION AGREEMENT (the "Agreement") of the same date executed by the Borrower and Lender as of the date above.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Agreement, Borrower and Lender further covenant and agree as follows:

1.  Escrow Items

Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked. Borrower is hereby advised that beginning on the monthly payment due date set forth above, the amount of Escrow Items will be included with Borrower's monthly payment of principal and interest.

2.  Interest Accrual Change.

Depending on the terms of your original note, interest may have accrued on a daily basis. According to the terms of your loan modification, interest will now accrue on an amortizing basis.

3.  Credit Reporting Change.

Your loan was originally created as a line of credit and reported as such to the credit reporting agencies. Upon implementation of the loan modification, the account will be modified to a closed end mortgage which may appear differently on your credit report.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and conditions contained in this LOAN MODIFICATION AGREEMENT RIDER.

_____ (Seal)
DEBORAH MOON                -Borrower

_____ (Seal)
CLARENCE MOON               -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

Loan Modification Agreement Rider

Borrowers ("Borrower"): **DEBORAH MOON, CLARENCE MOON**

# COMPLIANCE
# AGREEMENT

In consideration of **SELENE FINANCE LP** ("Lender") modifying the first lien mortgage loan (the "Loan"), in connection with the property located at **5615 RABUN RD, THOMSON, GA 30824** (the "Modification"), the undersigned ("Borrower") agrees, upon request of Lender, its successors or assigns ("Note Holder"), or upon request of any person acting on behalf of Note Holder, to fully cooperate with Note Holder or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Modification. Borrower further agrees to execute such documents or take such action as Note Holder or such person acting on behalf of Note Holder reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Note Holder to sell, convey, seek guaranty of, or market the Modification to any entity, including without limitation an investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any bonding authority.

Borrower further agrees to comply with any such request within a reasonable period of time as specified by Note Holder or by such person acting on behalf of Note Holder. Failure to comply shall constitute default under the Note and Security Instrument underlying the Modification, and Note Holder may pursue its available remedies.

BY SIGNING BELOW BORROWER ACKNOWLEDGES THAT BORROWER FULLY UNDERSTANDS THIS COMPLIANCE AGREEMENT OR OTHERWISE HAS SOUGHT THE ADVICE OF COUNSEL.

Date: 12\19\2019

_____ (Seal)     _____ (Seal)
**DEBORAH MOON**          -Borrower     **CLARENCE MOON**          -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                             -Borrower

**qPublic.net**™  McDuffie County, GA

## Summary

| | |
|---|---|
| Parcel Number | |
| Location Address | 5615 RABUN DR |
| Legal Description | 5615 RABUN DR NE DTMH |
| | (Note: Not to be used on legal documents) |
| Class | R4-Residential |
| | (Note: This is for tax purposes only. Not to be used for zoning.) |
| Zoning | R2 |
| Tax District | County (District 01) |
| Millage Rate | 28.49 |
| Acres | 0.92 |
| Homestead Exemption | Yes (H1) |
| Landlot/District | N/A |

View Map



## Owner

MOON DEBORAH &
MOON CLARENCE
5615 RABUN DR
THOMSON, GA 30824

## Land

| Type | Description | Calculation Method | Square Footage | Frontage | Depth | Acres | Lots |
|---|---|---|---|---|---|---|---|
| Residential | Res-Boyd | Acres | 0 | 0 | 0 | 0.92 | 1 |

## Mobile Homes

| Style | Manufacturer | Model | Year Built | Width Length | Serial Number | Condition | Value |
|---|---|---|---|---|---|---|---|
| Mobile Homes | HORTON HOMES INC | DYNASTY | 2000 | 24 x 64 | | Average | $33,601 |

## Accessory Information

| Description | Year Built | Dimensions/Units | Identical Units | Value |
|---|---|---|---|---|
| Fire Fee | 2021 | 0x0 / 0 | 4892 | $0 |
| Site Value (C) | 2020 | 0x0 / 1 | 0 | $2,500 |
| Porch: Screen | 2000 | 12x20 / 0 | 1 | $1,008 |

## Sales

| Sale Date | Deed Book / Page | Plat Book / Page | Sale Price | Reason | Grantor | Grantee |
|---|---|---|---|---|---|---|
| 3/28/2008 | 496 33 | L 124 | $93,000 | Unqualified - Improved | NORRIS SERENA W & | MOON DEBORAH & |
| 10/1/2003 | 362 176 | L 124 | $0 | Unqualified Sale | NORRIS SERENA W | NORRIS DANNY |
| 8/8/2003 | 355 434 | L 124 | $14,000 | Unqualified - Improved | WILLIAMS DOROTHY L & R | NORRIS DANNY & SERENA |
| 7/31/2003 | 355 436 | L 124 | $0 | Unqualified Sale | NORRIS DANNY | NORRIS SERENA W |
| 11/21/2002 | 329 483 | L 124 | $14,000 | Unqualified - Improved | WILLIAMS DOROTHY L & R | NORRIS DANNY & SERENA |
| 10/16/2000 | 269 206 | L 124 | $0 | Unqualified Sale | WILLIAMS BOUDRY B & | WILLIAMS R CRAIG & |
| 12/7/1998 | 231 484 | L 124 | $0 | Unqualified Sale | WILLIAMS BOUDRY B | WILLIAMS DOROTHY L |
| 5/5/1989 | 156 439 | | $10,000 | Unqualified Sale | ZEIGLER R S | WILLIAMS BOUDRY B & |

## Valuation

| | | 2022 | 2021 | 2020 | 2019 | 2018 |
|---|---|---|---|---|---|---|
| | Previous Value | $42,792 | $59,309 | $59,309 | $59,092 | $59,092 |
| | Land Value | $9,200 | $9,200 | $9,200 | $9,200 | $9,200 |
| + | Improvement Value | $33,601 | $30,084 | $46,633 | $46,633 | $46,633 |
| + | Accessory Value | $3,508 | $3,508 | $3,476 | $3,476 | $3,259 |
| = | Current Value | **$46,309** | **$42,792** | **$59,309** | **$59,309** | **$59,092** |

## Photos




**No data available for the following modules:** Rural Land, Conservation Use Rural Land, Residential Improvement Information, Commercial Improvement Information, Prebill Mobile Homes, Permits, Sketches.

The McDuffie County Assessor makes every effort to produce the most accurate information possible. No warranties, expressed or implied are provided for the data herein, its use or interpretation. The assessment information is from the last certified tax roll. All other data is subject to change.
User Privacy Policy
GDPR Privacy Notice

Last Data Upload: 9/1/2022, 7:17:45 AM

Developed by



Version 2.3.216